**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(<u>Baltimore Division</u>)**

| | | |
|---|---|---|
| IN RE: | * | |
| | | |
| **JOHN MCDONNELL MCPHERSON,** | * | **Case No.: 21-10205-MMH** |
| | | **(Chapter 11)** |
| **Debtor.        .** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **JOHN M. MCPHERSON** | * | **ADVERSARY NO.  21-00035** |
| | | |
| **Plaintiff** | * | |
| | | |
| **v.** | * | |
| | | |
| **CAMAC FUND, LP ET AL** | * | |
| | | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION OF CAMAC FUND, LP TO ABSTAIN FROM HEARING ADVERSARY**
**PROCEEDING; ALTERNATIVELY,**
**<u>MOTION TO STAY ADVERSARY PROCEEDING</u>**

Camac Fund, LP ("Camac"), Defendant, by and through its undersigned counsel, Alan M. Grochal, Richard L. Costella, and Tydings & Rosenberg LLP, hereby files this Motion to Abstain From Hearing Adversary Proceeding; Alternatively, Motion to Stay Adversary Proceeding (the "Motion"), and in support of its Motion, Camac states as follows:

**<u>INTRODUCTION</u>**

1.     On January 4, 2018, John M. McPherson (the "Debtor") and Camac executed a Litigation Funding Agreement (the "Funding Agreement") in the amount of $1 million (the "Camac Funding").  A true and correct copy of the Funding Agreement is attached hereto as **Exhibit 1.**  The purpose of the Funding Agreement was to provide the Debtor, through a sale of a portion of the Debtor's interest in certain whistleblower cases, with the capital necessary to fund

his business operations, pursue whistleblower cases, and "extinguish outstanding liabilities"; which liabilities included years and years of unpaid taxes.  *See* Ex. 1 at p. 1.  The Funding Agreement includes an arbitration clause for any dispute arising thereunder.

2.      As discussed below, the Debtor materially breached the Funding Agreement, and as a result, pursuant to the arbitration clause contained therein, Camac submitted a Statement of Claim and Demand for Arbitration (the "Arbitration Demand") to the American Arbitration Association ("AAA") on September 30, 2020.  The Arbitration Demand asserts purely state-law claims against the Debtor as follows: breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.

3.      Notably, on January 12, 2021, after repeatedly threatening to file for bankruptcy as a means to bring Camac toward a settlement, and just one day prior to a scheduling hearing in the Arbitration, the Debtor initiated this bankruptcy by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      With knowledge that Camac would be seeking relief from the automatic stay so that the arbitration proceeding could go forward, the Debtor, on February 10, 2021, filed a Complaint against Camac and Berman Tobacco ("Berman"), the law firm designated in the Funding Agreement[1].

5.      On February 19, 2021, Camac sought relief from the automatic stay so that the arbitration could move forward.

## STATEMENT OF FACTS

**A.  The Litigation Funding Agreement.**

---

[1] Shortly after the Petition Date, Counsel for Movant and Counsel for the Debtor had a telephone conversation in which it was disclosed that Camac would be filing a motion seeking relief from the automatic stay to allow the arbitration to move forward.

2

6.    The terms of the Funding Agreement state that in exchange for the $1 million from Camac, Camac would purchase a share of the proceeds from various litigation and non-litigation matters (the "Litigation Proceeds") arising from certain whistleblower cases (the "Cases") that the Debtor was involved with at the time, or was later to become involved in.

7.    A key provision of the Funding Agreement was that Bryan Wood, Esq. ("Mr. Wood"), a Berman lawyer well known by Camac who—at the time the Funding Agreement was executed—was representing the Debtor in whistleblower submissions, including one related to the litigation in the United States District Court for the Western District of Texas captioned *SEC v. Life Partners Holdings, Inc.*, *et al.*, Case No. 12-cv-00033-RP (the "Life Partners Action"). Without Mr. Wood's involvement in the Life Partners Action and other matters, Camac would not have entered into the Funding Agreement.  As such, in the Funding Agreement the parties expressly recognized Mr. Wood's involvement on behalf of the Debtor.  *See* Ex. 1 at p. 2.

8.    Pursuant to the Funding Agreement, Mr. Wood would manage the Litigation Proceeds from any Cases covered by the Funding Agreement.  Litigation Proceeds are defined in the Funding Agreement as:

> [T]he gross total revenues, recoveries, and/or proceeds, whether monetary or non-monetary, obtained from, paid by, or paid on behalf of the Cases.  This includes, but is not limited to, all whistleblower payments paid by any government agency, expert witness revenues, all damages, settlement sums, compensation, accounts of profits, restitution, licensing revenues, sums from any development and/or commercialization agreement, costs, fees and expenses received from the Cases, and all similar sums, before deduction of any taxes.

> Ex. 1 at p. 1.

9.    Cases are defined as the Life Partners Action and "[a]ny and all other submissions, cases, or the like under the SEC, IRS, or CFTC whistleblower program, or under any qui tam statute."  *Id.*

10.     Mr. Wood's role, defined in the Funding Agreement, was to update Camac on the status of recoveries, and serve as the escrow agent for the account that held the funding amount. The nature of whistleblower recoveries is such that nearly all of the proceedings are not public record, and without Mr. Wood conveying information to Camac, Camac would have been unable to ascertain whether the Debtor has recovered any Litigation Proceeds. Given the Debtor's longstanding history of blatant nonpayment of taxes, Camac was concerned that it could not solely rely on the Debtor's word. For this reason, it was the most critical element of the Funding Agreement.

11.     Unfortunately, Camac's concerns were justified, as the Debtor removed Mr. Wood from the Life Partners Action and discontinued using him as counsel in new cases with the intent of avoiding his repayment obligations to Camac, thereby materially breaching the Funding Agreement.  For example, Camac was informed by a third party that on or around August 2019 the Debtor received profits related to another whistleblower case covered by the Funding Agreement (the "General Electric Matter")), but the Debtor did not inform Camac of the receipt of those Litigation Proceeds, did not distribute any such proceeds to Camac, and has since denied that the proceeds are within the scope of the Funding Agreement.

12.     The Funding Agreement also called for the Litigation Proceeds to be distributed first to Camac, until Camac had received the agreed-upon amount (currently $4.2 million, and that amount increases each calendar year until 2024), and that Debtor would not adversely affect the priority, perfection, or validity of Camac's security interest.  Further, the Debtor represented in the Funding Agreement that Camac shall have a first priority security interest in any Litigation Proceeds.  Debtor has broken those covenants as well—all material breaches of the Funding Agreement.

4

13.     The Funding Agreement includes a governing law provision which states that "any and all claims or causes of action . . . arising out of or relating to this [Funding] Agreement . . . shall be governed and construed and enforced in accordance with the internal Laws of the State of Delaware without reference to its choice of law rules."  Ex. 1 at p. 4.

14.     The Funding Agreement also includes a Dispute Resolution provision, which states that if the parties have a dispute arising from the Funding Agreement, "the [P]arties agree to submit such dispute to binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules …"  *Id.*

**B.  The Arbitration.**

15.     Pursuant to the Dispute Resolution clause—and due to the Debtor's breaches described above—Camac submitted the Arbitration Demand to AAA on September 30, 2020.

16.     Fifteen days later, on October 15, 2020, the Debtor responded to the Arbitration Demand with Respondent's Challenge to Arbitrability and Answer to Demand for Arbitration (the "Answer").  A true and correct copy of the Answer is attached hereto as **Exhibit 2.**

17.     Twelve days after filing the Answer, the Debtor also filed a Counterclaim (the "Counterclaim"), on October 27, 2020. A true and correct copy of the Counterclaim is attached hereto as **Exhibit 3.**

18.     A scheduling hearing was set for January 13, 2021 but was stayed by the Debtor's filing of the instant bankruptcy case on January 12, 2021 (the "Petition Date").

**C.  The Adversary Proceeding.**

19.     The Debtor filed the Complaint on February 10, 2021.

#3759820v.2
#3759820v.3

20.     The Complaint consists of six counts as follows: (a) Avoidance of Preferential Transfer; (b) Avoidance of Fraudulent Obligation; (c) Turnover of Property to Debtor's Estate; (d) Disallowance of Claim; (e) Setoff; and (f) Subordination.

**D.  The Motion Seeking Relief from the Automatic Stay.**

21.     On February 19, 2021, Camac filed a Motion for Relief from the Automatic Stay to Permit Continuation of Pending Arbitration Proceeding (the "Motion for Stay Relief") (dkt. 36).

22.     On March 4, 2021, the Debtor filed an opposition to the Motion for Stay Relief, relying almost exclusively on its filing of the Adversary Proceeding.

23.     A hearing is scheduled on the Motion for Stay Relief on April 1, 2021.

## ARGUMENT

**A.  <u>There is a Presumption in Favor of Arbitration</u>**

24.     In *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015), the majority opinion by Judge Gregory, in reversing the denial of arbitration on a State law claim, stated as follows: "A bankruptcy judge's discretion to deny arbitration of non-core matters is thus necessarily narrow… . the discretion to deny arbitration should be limited to cases where arbitration would substantially interfere with the debtor's efforts to reorganize." *Id*. at 84.  Factually, *Moses* was a more difficult decision than the instant case because there were two claims at issue there, one core claim and one non-core claim.  Relying on the Third Circuit's decision in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1158 (3d Cir. 1989), Judge Gregory cited with approval the conclusion in *Hays* that "even if there were some potential for an adverse impact on the core proceeding [as a result of arbitration], such as inefficient delay, duplicative proceeds, or collateral estoppel effect…has not shown that it would be substantial enough to override the policy favoring arbitration."  *Moses*, 781 F.3d at 86.

6

25.     The policy of favoring arbitration of claims has been articulated in a number of cases in this Court.  *See In re Porter-Hayden Co.*, 304 B.R. 725, 736 (Bankr. D. Md. 2004) ("Given the strong federal policy favoring arbitration, a bankruptcy court should enforce an agreement to arbitrate non-core claims unless the objecting party shows that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration clause")[2]; *In re Fries*, 2007 WL 1073868 (Bankr. D. Md. 2007) ("While the objection to a proof of claim is a core proceeding, the court finds that arbitration should be compelled in this case in that the Bankruptcy Code does not inherently conflict with the mediation or arbitration of this claim").

26.     This case presents an easier decision than *Moses* since, as will be explained below, all of the claims relate to the Funding Agreement which is interpreted under Delaware law and therefore are non-core.

**B.  This Court Should Abstain from Hearing the Adversary Proceeding.**

27.     28 U.S.C. §1334(c)(1) provides as follows: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State court or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

**1.      Interest of Justice Factors**

28.     "While the statute does not give any specific direction as to the factors a court is to analyze in the interest of justice, courts have determined that an assessment of the following factors is appropriate:  (1) efficiency in the administration of the debtor's estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) whether the issues involve difficult or

---

[2] It is somewhat ironic that the Debtor is attempting to prevent an arbitration from going forward by filing an Adversary Proceeding because this is the same tactic that Debtor's counsel unsuccessfully attempted in *Porter-Hayden*.

#3759820v.2
#3759820v.3

unsettled questions of state law that would be better addressed by a state court; (4) the presence of a related proceeding commenced in state court; (5) the existence of a jurisdictional basis other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court; (9) the burden of the federal court's docket; (10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) whether non-debtor parties are involved in the proceeding.'" *Power Plant Entertainment Casino Resort Indiana, LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md. 2012) (quoting *MacLeod v. Dalkon Shield Claimants Trust*, 967 F. Supp. 856, 858 (D. Md. 1997). The *Power Plant* Court goes on to analyze each factor individually. No factor is given more weight than another.  In an unreported decision, the District Court of Maryland also analyzed these twelve factors in *In re Lloyd E. Mitchell, Inc*., 2008 WL 11518428 (D. Md. 2008).

29.     Analyzing many of these factors in the instant case inescapably leads to the conclusion that abstention is warranted.

a.     Factor #1: <u>Efficiency in the administration of the Debtor's estate</u>.  Since the Debtor has yet to file a Plan and this Chapter 11 case is in its infancy, there can be no serious claim that allowing arbitration to go forward to liquidate the estate's largest claim will interfere with administration of the Debtor's estate.

b.     Factor #2: <u>The extent to which State law issues predominate</u>.  As noted above, the Funding Agreement provides that Delaware law shall control.

c.     Factor #3: <u>Whether the issues involve difficult or unsettled question of State law</u>.  The Debtor, in both his challenge to arbitrability and in his counterclaim filed in the

#3759820v.2
#3759820v.3

arbitration, raises a number of issues, including the validity of the Delaware choice of law clause, but does not claim that the disputes are not controlled by State law.[3]

      d.    Factor #4: <u>The presence of a related proceedings pending in State court</u>. As noted, the arbitration proceeding is pending and has been stayed by the Debtor's bankruptcy filing.  *See Porter-Hayden,* 304 B.R. at 735 (arbitration proceeding qualified as a pending state court action).

      e.    Factor #6: <u>The degree of relatedness or remoteness of the proceeding to the main bankruptcy case</u>. Interpretation of the Funding Agreement has no connection whatsoever to the main bankruptcy case aside from the fact that the claim of the largest creditor is based upon the Funding Agreement. *See id* at 730-31.

      f.    Factor #7: <u>The substance rather than the form of an asserted core proceeding</u>.  There is where the Debtor is trying to game the system.  All of the counts in the Complaint sound like bankruptcy core matters:  preference, fraudulent obligation, turnover, disallowance of claim, setoff and subordination. However, upon closer inspection it is readily apparent that Counts III through VI are in essence remedies for an alleged breach of contract claim under state law. In Count III, the Debtor seeks turnover of funds in an IOLTA account because of an alleged breach of contract by Camac.  As Judge Derby found in *In re Porter-Hayden Co.*, 304 B.R. 725, 732–34 (Bankr. D. Md. 2004), simply because the Debtor characterized a cause of action as turnover, did not in fact make it so. The turnover cause of action articulated in the Complaint is a non-core breach of contract claim to be decided under Delaware State law.  Similarly, the Counts for Disallowance of Claim, Setoff and Subordination are all remedies based upon the premise the Debtor is concocting that Camac, not the Debtor, breached the Funding Agreement.  What is not

---

[3] The Debtor appears to claim that notwithstanding the plain language in the Funding Agreement, that New York law should apply.

in dispute is that Camac claims that the Debtor breached the Funding Agreement and the determination of who is in breach will be determined at the arbitration by applying Delaware State law. Finally, while Counts I and II, Avoidance of Preferential Obligation and Avoidance of Fraudulent Obligation, sound like core proceedings, in fact the ability of the Debtor to bring both counts is governed and explicitly prohibited by the Funding Agreement. Under the section entitled "Interest in Litigation Proceeds" the Funding Agreement provides as follows: "Litigant hereby grants Funder a first priority security interest in the Litigation Proceeds **and shall take all action necessary to maintain the first priority status of such interest. Litigant shall not adversely effect or permit anything to adversely effect the priority, perfection or validity of Funder's interest…"** Ex. 1 at p. 2 (emphasis added). In such circumstances, the enforceability of this provision will be determined at the arbitration and therefore these counts are also impacted by the stayed arbitration proceeding.

       g.     Factor #10: <u>The likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties</u>. That the Debtor wishes to avoid arbitration and sought relief in this Court in an effort to find a more sympathetic forum is patently obvious. After delaying the arbitration scheduling hearing multiple times over the course of several months by a threat of filing bankruptcy, the Debtor ultimately filed Chapter 11 the day before the Scheduling Hearing in the arbitration was finally set. Similarly, the filing of the Adversary Proceeding was a transparent effort to try to have this Court, rather than the arbitrator, decide the issues raised in the Debtor's Counterclaim filed in the arbitration rather than see the

#3759820v.2
#3759820v.3

actual course of events and the Debtor's material breaches.[4] The only conclusion that can be drawn from the Debtor's actions is that he has engaged in blatant forum shopping.

30.     Pursuant to Local Bankruptcy Rule 9013-2, Camac states that no memorandum of law will be filed in support hereof, and it will rely solely upon this Motion.

## CONCLUSION

For all of the foregoing reasons, Camac respectfully requests that this Court abstain from hearing the Adversary Proceeding or, alternatively, Stay the Adversary Proceeding, pending a determination in the arbitration proceeding that was stayed by the Debtor's bankruptcy filing.

Dated: March 25, 2021.                           Respectfully Submitted,


                                                 /s/ Alan M. Grochal
                                                 Alan M. Grochal, Bar No.: 01477
                                                 Richard L. Costella, Bar No.: 14095
                                                 Tydings & Rosenberg LLP
                                                 One E. Pratt Street, Suite 901
                                                 Baltimore, Maryland 21202
                                                 Phone: (410) 752-9753
                                                 Fax: (410) 727-5460
                                                 Email: agrochal@tydings.com
                                                         rcostella@tydings.com

                                                 *Attorneys for Camac Fund, L.P.*

---

[4] There is significant overlap between the allegations in the Counterclaim filed by the Debtor in the arbitration proceeding and in the Adversary Complaint. Most notably, the Debtor claims that Camac, rather than the Debtor was the breaching party.

#3759820v.2
#3759820v.3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of March, 2021, a copy of the ***MOTION OF CAMAC FUND, LP TO ABSTAIN FROM HEARING ADVERSARY PROCEEDING OR, ALTERNATIVELY TO STAY ADVERSARY PROCEEDING*** was served via the Court's ECF filing system, and where indicated, by the U.S. Mail, postage prepaid, on the following:

Brent C. Strickland, Esq.
Paul M. Nussbaum, Esq.
Whiteford Taylor & Preston, LLP
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
bstrickland@wtplaw.com
pnussbaum@wtplaw.com

James Daniel Ford, Jr. (UST)
Office of the U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
j.dan.ford@usdoj.gov

Kimberly P. West, Esq.
Simon Cataldo, Esq.
Ashcroft Law Firm
200 State Street, 7th Floor
Boston, MA 02109
(by mail)

Berman Tabacco
One Liberty Square, #8A
Boston, MA 02109
(by mail)

Laura S. Bouyea, Esquire
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202


/s/ Alan M. Grochal
Alan M. Grochal, Esquire

12

#3759820v.2
#3759820v.3